Case 23-3740, John and Jane Doe No1 v. Bethel Local Bd of Education et al., argument not to exceed 15 minutes to be shared by Appellants and Amicus State of Ohio and 15 minutes to be shared by Appalese and Amici Equality Ohio and Anne Rowe. Counsel you may proceed for the appellants when ready. Judge Moore, may it please the court, Ben Flowers for the appellants. I'll try to reserve three minutes for Ohio and two for my rebuttal. Fine. And I'll begin by urging you to reverse the district court's resolution of our free exercise claims. Bethel violated the free exercise clause by treating secular conduct more favorably than comparable religious exercise. Specifically, it treated the burdens associated with lack of access to communal restrooms as worth addressing if those burdens are experienced as a result of secular beliefs about gender, but not if they arise from sincere religious convictions. And we know this because the challenge policy accommodates religious objectors by offering them the same accommodation with the same hardships that was previously deemed intolerable as applied to transgender students. Namely, they have access to the single-user restrooms, but the limited number of those, the large size of the religious communities, means that students end up holding their urine, refusing to use the bathroom, and suffering the educational benefits. So that's not a policy that's neutral and generally applicable, meaning strict scrutiny applies. And Bethel, here at this stage, does not argue that it can satisfy strict scrutiny. That leads to reinstatement of the federal claim, and it also leads to reinstatement of the state free exercise claim. Because the only basis the district court gave for refusing to exercise supplemental jurisdiction over that claim was the dismissal of the federal claims. And in particular cases like Veneclay's, I believe that's how you pronounce it, if the federal claims are, if a court refuses to exercise supplemental jurisdiction on that basis, the federal claims are subsequently reinstated, the state claims get reinstated as well. So I'm curious on a free exercise claim, if you would address a hypothetical. Suppose that the parents in a hypothetical said that their sincere religious beliefs required that boy students sit in a different place in the classroom than girl students. Girl students needed to sit in the back of the classroom. Would a free exercise claim be able to go forward if the school district said no, our policy is that boys and girls should be intermingled in the classroom? I think likely not, or certainly not in fact, because obviously the government cannot remedy one constitutional violation by creating another. And that sounds like would be an impermissible distinction based on sex, as opposed to a permissible distinction based on sex. Separating the sexes in that way in school, I don't think would pass constitutional muster, even under intermediate scrutiny that applies to such claims. And it's a similar kind of argument if someone said they objected to, on religious grounds, to sharing the restroom with someone of an opposite race. Well the government cannot accommodate that concern, because if they were to do so, they would be violating the Constitution. So they can't cure one problem by creating another. I can move on to the Title IX claim we raised. If there are no further questions on that, I'm happy to come back. But the district court dismissed our Title IX claim, which sought a declaratory judgment for lack of Article III standing. And it erred, and I think it's easiest to understand the error if we just tick off the three requirements of Article III standing. The first is injury in fact, and we allege two of them. The series of constitutional injuries, but also an impairment of the student's educational experience, which is the sort of a classic Title IX injury. And in fact, the same injury that a transgender student would raise if they wanted to challenge a bathroom policy is not accommodating them on the basis of sex. Now the district court seemed to think that we had to allege a violation of our Title IX rights in order to have an injury in fact. And I think that is foreclosed, but, excuse me, by the Perkins case, which makes clear that when we do the injury in fact analysis, we're looking for a real world, de facto, concrete injury. We're not looking for something that's linked to the elements of a particular claim. And I think the district court made a mistake there. Now the second element of standing is fair traceability. I don't believe that to be in dispute here, so we get to redressability. And I think this is where the rubber meets the road. Bethel argues that the declaratory judgment would not redress our injuries because they could, in theory, retain the same challenge policy no matter what the answer is on the declaratory judgment issue. I don't think right. In fact, I know that's not right, and it's not right for both factual and legal issues of reasons. The factual reason is there's no evidence in the record to support the fact that they would retain this policy if they were to learn that Title IX didn't require it. Their own declarations, which you can find at Record 18, it's like 18-1, 18-2, 18-3. There you'll find declarations establishing that they adopted the policy based on advice of legal counsel. No other reason. And despite having every incentive to say so, they've not said under oath that they would retain this policy otherwise. We haven't been to discovery yet, right? So all you have to do is plead plausibly that they would, that your injury would be reversed, right? So I think that's right. I may make a little bit of a statement against interest. Since it's a Rule 12c motion, you can consider other pleadings. So for example, answers and exhibits attached there too. Also at the standing stage, someone can raise a factual challenge. I candidly don't think they did that here, but insofar as it is a factual challenge, I don't think there are any facts to support the District Court's factual resolution. But let me also pivot back to the, right, I mentioned the legal problem with the District Court's analysis. A favorable ruling will leave Bethel with no choice because in addition to the Title IX claim, we've raised this state law claim. So if Title IX does not compel the adoption of this policy under our theory of the state Constitution that Ohio will address, the state law will actually prohibit it. Now it might seem odd to you to say that the federal claim, we have standing for the federal claim because of a state claim. So let me maybe explain why I don't think it is so strange, and that's if you come at it from the other angle. So ask if we have Article 3 standing for the state free exercise claim. We plainly do. We have a constitutional injury, got traceability, and it would be addressable by say an injunction or damages. Can we just pause for a minute? You don't have a Pennhurst problem because this is a school district that's not entitled to the state's sovereign immunity? Is that? I think there's that, but also we sought damages in addition to the claim for injunctive relief. Okay. But would there be, and the question of standing, I think we'd plainly have standing. And we would have standing even though for that injury to ultimately be redressed, we'd have to win the Title IX issue because they would come back and say Title IX preempts the state law claim. And so all the declaratory judgment action is doing is seeking a ruling on an issue of federal law that anyway has to be addressed in the course of addressing the state law ruling. And that's why they're so inextricably intertwined. Yeah, because otherwise it's preempted, your state law claim. I think so, yes. Now finally I'll just touch on parental rights with my last few minutes here. The district court's dismissal rests on a flawed premise, which is that with respect to the right to control a child's, or with respect to the right to care and control and custody of a child in public schools, the right is exhausted once the parent decides where the child enrolls in school. And that can't be right, if the court did say that, it would create a circuit split. Because both the Third Circuit and the Eleventh Circuit have held, for example, that suppressing information about a child's pregnancy would run afoul of the fundamental right to. But how do you deal with the issues of one set of parents asserting certain views with respect to their children, and another set of parents having diametrically opposite views? Using my example of girls and boys sitting in classrooms, that could be parental rights, not just free exercise rights. So some people want to have their kids interacting and other people don't with the opposite sex. Yeah, sure, so let me take it in two steps. The first is there is a right beyond just the right to choose the school. So for example, if a kid goes to school and receives medical treatment without parental consent, that's obviously a violation, even under this court's decision in Kanacheski. I believe that's how you say that case name. Right, so that's step one, is the rights broader than that. Step two, for how I avoid that clash of interest that's irresolvable, is we're not seeking, at least anymore under this claim, to say they can't adopt this policy at all. At this stage, we're saying they've violated our rights because not only did they adopt this policy, which implicates fundamental moral views, potential safety concerns, but they refuse to answer the parents' questions about the policy's operation. But is that a federal claim or is that really a claim that under state law, school boards are required hypothetically to answer parents' questions? Yes, so I'm not trying to have you say that the 14th Amendment's a constitutional FOIA. All that I'm looking for is a ruling that they cannot suppress information that parents need to exercise the rights everyone admits they have. So let's, if we back up and go to the, I think, an uncontroversial case. A school learns that a student is pregnant and they take over the management of that pregnancy without telling parents. I think at that point there would be a violation and the violation wouldn't be that the school managed the pregnancy in some, or necessarily that they managed the pregnancy in an incorrect way. It'd be that they failed to give the parents the information they needed to resolve it as they saw fit. So I think it's when the information they're withholding or suppressing is such that it prevents the parents from exercising the rights that are fundamental that we get a problem. And that's why we compared it to cases where, you know, a municipality shuts down gun ranges and though there's not a right to open a gun range, there is a right to bear and keep arms, which suggests proficiency in them, and certain rights that are tangential, or certain actions that are tangential will burden the right. If you're talking about parental rights, suppose that one parent says the class should not be discussing the XYZ book, and another parent says I think it's really important that the class discuss the XYZ book. Who should decide whose rights prevail, or should it be the school that gets to decide we're going to teach the XYZ book? So with respect to parental rights, I don't want to get into equal protection, free exercise, and everything, but if we focus on parental rights, under this court decision in Blau, the school gets to decide. But we're not arguing otherwise. We're saying what the school also has to do is tell the parents, at least if they ask, that that's what's being taught, or at least make it possible for the parents to get that information. That's a matter of the 14th Amendment? Correct, because without that information, the parents cannot wield the right that everyone does admit they have. So you are constitutionalizing what I was saying should be state law. You're making it a federal constitutional right, and I thought the states should be supreme in deciding the matters of what information the state schools are doing. Right, but I think everyone acknowledges some limits on that, like in the pregnancy example I gave. Yeah, but the question is where you draw the line. Admittedly. Even assuming that you're correct on pregnancy, which I'm not necessarily endorsing. Sure, and I wish I could stand here and give you a bright line. I don't think there is one. I think that's just the nature of this particular right, that it's going to be developed in sort of a common law process. I see that I'm getting into Ohio's time, so I want to make sure we get on it. Sure, yes. Do you have a question? Thank you. Good afternoon, Your Honors. Elliot Geiser on behalf of the state of Ohio. I just want to make three quick points on the Ohio Constitution standing, and then where to go here, and why Ohio urges this court to reverse the District Court. First, Section 7 of the Ohio Bill of Rights forbids Bethel's policy. As the Ohio Supreme Court held in Humphrey v. Lane, strict scrutiny applies to state free-exercise claims. Whatever the merits of Smith v. Employment Division, they have no bearing on what the Ohio Constitution says because of the textual broadening of that right. And here, the Muslim and Christian students and parent plaintiffs have shown, and neither defendants nor the court below questioned, that they truly believe that a law desires modesty and separateness between the sexes, and that because God created people in his image, male and female disrobing in the presence of the opposite sex, degrades a fundamental part of their dignity. That's a prima facie case. Would that apply also then, in my hypo, to having sincere religious beliefs that the boy should sit in the front and the girl should sit in the back? No, I think that my friend, representative of the plaintiffs here, had the exact right answer to that. That in satisfying the state constitution, you can't violate other provisions of the state or the federal constitution, and segregating on the basis of sex outside of intimate facilities, I think would raise concerns constitutionally that might be countervailing, could rise to the level of a compelling interest for the state. So it depends on your definition of what's an intimate setting? Well, I don't think it depends on, I mean, no one's disputing here what an intimate facility is. We're talking about bathrooms, locker rooms, children in overnight sports teams. Someone's religious beliefs might think that the classroom is an intimate setting just as much as a locker room. Well, so, and I think under state law, the question would be whether they've made out a prima facie case, and then the burden would shift to the government actor, here Bethel City Schools, to satisfy strict scrutiny. That's the standard that the Ohio Constitution lays out. Now, we think that the hypothetical that you're discussing here is very different from the case here. This is very practical. Kids are holding their urine, they're unable to experience the educational benefits of the school that they're supposed to get, and they've just simply transferred burdens. That could be equally true, that if you have girls in the back, the implication is so significant that they're treated as secondary people. Well, so I agree with you, your honor, that the state would have compelling interests in low-educational educational facilities besides intimate facilities. And there's a long history and tradition here of what an intimate facility is, and that can bear on the strict scrutiny analysis that the Ohio courts would apply. Now, in my remaining 10 seconds, I'll just say that if the court agrees with this, or has any doubt about this, the court should certify the question to the Ohio Supreme Court, and my friends laid out a good example of that. And because all this is true, the Title IX claim is live, and this court should reverse the standing decision, which we believe was erroneous. Thank you. Good afternoon. Taylor Knight on behalf of Bethel's local school district, as well as the individually named defendants that are associated with Bethel. First and foremost, we believe that the district court properly dismissed the appellant's free exercise claim, because Bethel policy is neutral, generally applicable, and only burdens, and any burden to the religious activity is merely incidental. In order for a rule to be generally applicable, it is one that restricts religious conduct the same way that analogous non-religious conduct is restricted. And throughout the appellant's brief, I've seen that they're sort of describing the secular conduct and the religious conduct as transgender students being allowed to use the restroom over the rights of a religious student being allowed to use the restroom or not being allowed to use the restroom at the same time. But I think what we're skipping is a whole group of students that are represented by John Doe No. 9. And if you look in plaintiff's complaint, John Doe No. 9 is not identified as being religious in any respect. And so it's our position that this is not transgender students versus religious students, that the secular activity at issue is using the restroom. It's not allowing transgender students to use the restroom. It's not forcing, the religious activity isn't forcing the religious students to use the restroom with transgender students, because the policy across the board is all students at Bethel schools, regardless of their religion, regardless of their race, are allowed to use a restroom that is consistent with their gender identity. And equally, something that I don't think appellants brought up here today, is that all students also have access to single-use restrooms in the Bethel school facility that they are all allowed to use, simply by filling out a form. They don't have to identify any specific need. There's no allegation that they have to identify a specific need to use. Why did they have to fill out a form? I thought they were just available to everybody. They are, but the policy at Bethel school is they have to fill out a form to use the single-use restroom. But it's not limited to a certain group of students, and there's no information in the record or any allegation in the complaint that in order to gain access to the form or to be allowed to use the restroom, that there has to be some sort of religious accommodation or, you know, specific reason as to why they need the form. They just need to fill out the form. I'd like to ask about the Title IX claim. All the evidence in the record seems to suggest that you adopted the policy because counsel told you that Title IX requires it. And the redressability part seems to be, the sticking point seems to be, whether if you got different advice you would undo the policy. And so I guess I'm wondering why they haven't alleged enough in their complaint that they shouldn't be allowed to depose members of the school board and get discovery and figure out. That just seems like a factual question, and I don't know why we're not proceeding beyond 12b-6 on that. Sure, so in their complaint, their Title IX claim, which they classify as a declaratory judgment action, is two paragraphs. It says, Title IX authorizes separation of intimate facilities based on biological sex and asks for the court to issue a declaratory judgment that Title IX does not require Bethel Board of Education to implement a policy based on gender identity. They do not say that based on the advice of legal counsel, which was based on the Dodds case from this court, that if that hadn't happened then the policy wouldn't have been implemented. They don't have any of those allegations in the complaint, and so I think that's where we get to the redressability that they're claiming would happen and gives them standing in this case is purely speculative, because as the district court recognized, even though when the policy was announced the Bethel School District indicated that they were making that policy based on the advice and consent of the school board lawyer, they never said this is the only reason we're doing it, and the district court... Right, but if it's the causal impetus and then you take away the cause, it seems at least plausible. We're on a 12b6. It seems at least plausible that if you took away the causal agent, you'd go back to the way it was, and that just seems like a fact question that is knowable or discoverable, and that's why we have discovery. So I'm stuck on why we're not getting... why we're not moving on with that claim. Well, I think the short answer is they didn't allege that. They didn't allege that the policy would not have gone into place. Didn't they allege that it was the cause, so it's not a fair inference from that, that if you remove the cause, you go back to the way it was before? That just seems like a logical inference in their favor. I mean, I think they, in their complaint, included the statement from, or at least in their briefing, included the statement from the board that they said was read that explained why... what the board policy was. It said on the advice and consent of our lawyer. I don't think there's anywhere in the complaint, or you'll see anywhere in their briefing, where the school board said, because the lawyer gave us this advice, we're doing X. Or, if the lawyer hadn't given us this advice, we wouldn't have done this. Because, you know, this all started because Anne Rowe came to them and asked for an accommodation. So it's not just this general, you know, the Dobbs decision comes down, the lawyer says, guys, we've got to do something about this, let's implement this policy, right? And so they have an actual student in front of them asking for an accommodation, and that sort of starts the chain of events. And I think the district court appropriately recognized, with respect to the lack of addressability, and they sort of go through that, it's all based on hypotheticals. So if this gets overturned, then, and if this board, if this court says, agrees with the plaintiffs, and says there is no standing under, or there is, excuse me, standing under Title IX, and overturns the decision, then the school board, which is an entirely different school board now than it was then, will reconsider this issue and address the policy, based on my understanding of what's going on in the school today. There is no transgender students that are at issue right now, and so it begs the question of, do we address the policy if no one's actually invoking the policy, or using the policy? And as the district court appropriately recognized, the school can, based on the makeup of the board, or its student population, or, you know, where they think should be next. Right, but this all just seems like a fact question, again. Also, in FEC versus Aikens, the Supreme Court had this same question about, what if we, if we strike down this rule that was before the court in Aikens, it's not clear that the agency will follow through, will do the thing that the plaintiffs want, which was disclose information. They have discretion. And the Supreme Court said, yeah, those, I mean, this isn't an agency context, but those adversely affected by a discretionary agency decision generally have standing to complain that the agency decision based its decision on an improper legal ground. That sounds like your case. Well, and I think you don't even get to redress the ability, because they don't have an injury in fact, because they haven't alleged it. Injury in fact is the same injury in fact that Roe was claiming. Burying her urine, not being able to participate fully in school, it's the exact same injury in fact, right? I don't think that it is, because she's asking for an accommodation that is not being provided to her at the time, and they are all, they do, they are allowed to use those restrooms though, and I think generally speaking for Anne Roe, every time she goes into the restroom, this is an issue for her, right? That sounds like a merits question, not an injury question, not an Article 3 question. I don't think it's a merits question, and I think it goes to the hypothetical nature of their injury on the basis that we know Anne Roe is a transgender student. Every time she goes into the bathroom, this is a problem for her, right? The same thing is true for the Christian and Muslim students. I would disagree with that in the sense that it's only a problem for them if Anne Roe happens to be in the bathroom the same time they are, right? So her risk is every time she shows up at school to go to the bathroom and is using the restroom that she gender identifies with, it's going to be a problem for her and there's going to be anxiety or she's not allowed to use the restroom. That's going to be an issue for every single time she goes into the bathroom. But for the religious students, I'll call them as a group, they only have a problem if Anne Roe is in the bathroom at the same time they are. Does that make sense? So that's why I think that the injury is different for the two of them and when it comes to the end of the day is this decision is not infringing on their Title IX rights and they're not, they haven't alleged that their Title IX rights were infringed on. That again goes to the merits. They don't need a Title IX injury. They just need an injury in fact. We're at the constitutional stage. All right, if there's no other questions on that, I'm sorry, I just want to get the last one since I only have a minute left. All right, the last one that I sort of want to address just briefly since I have limited time left is the parental rights question. We believe that the district court got this absolutely correct basing this court's decision on Blau. Again, I hope I'm saying that right. Where the court recognized there's a fundamental right to decide to send the children, one's to public school, but that doesn't extend beyond the right to extend the right to send children to public school. There was questions about what analogizing to hiding a child's pregnancy or manning a child's pregnancy. We do not think that asking the school for information that it's refusing to provide relative to general policies is akin to hiding information from a parent about a child's pregnancy and I think Judge Moore, you identified correctly that where does it end? How do you decide what competing interests you're going to listen to and what competing interests you're not, which is exactly what this court recognized in Blau in that the decision is for the parents, what school they want to send them to, and part and parcel of that decision is if a parent feels like they are not getting appropriate information from a school, they can put them in a different one. So that falls in that same category. I know I'm into time for counsel for the ACLU, so I'm just going to take a step back unless you have any other questions. Thank you. Thank you. Okay, good afternoon, Your Honors. Malita Picasso, counsel for Amici-Ann Rowe and Equality Ohio. So there's no world in which we can construe the complaint as raising a Title IX claim. There are no allegations in the complaint that the policy violates Title IX or that the policy discriminated against plaintiffs on the basis of their sex. Instead, the court has before it an undefinable claim in which plaintiffs are seeking advisory opinion regarding the rights of transgender students under Title IX to essentially hold in their back pocket in case a specific series of future events unfolds precisely as the plaintiffs predict. Plaintiffs have been adamant since the beginning of this case that they seek an order stating that Title IX does not require Bethel to implement a communal bathroom policy based on gender identity. That's in the complaint, that's in their standing brief, that's in their response to the motion to dismiss, in their appellate brief, and in their reply brief. But such an order would simply not redress the injuries that they've alleged because Bethel maintains an independent basis upon which it can maintain the policy notwithstanding Title IX. The fact that it was listed in their initial justification of adopting the accommodation does not mean that it is the sole basis for them to adopt the policy that they've chosen to adopt. Plaintiffs are essentially not entitled to discovery. It just seems like a fact question to me. I just don't know why they're not entitled to discovery on that question. Well, I think the reason is because they might change their mind or they might not change their mind. And the question is their injury will be redressed if they change their mind. And we're at summary judgment, right? So, or I'm sorry, we're on a motion to dismiss and so we're only, they only have to allege plausibly that they would change their mind and then they get discovery. I don't. But they would have to, I mean, I think the reason is because the responses to those discovery requests would not necessarily even be binding on the school district itself, right? I mean, they could say, yes, that is the sole basis for us to have made this decision, but that doesn't strip them of their independent authority as school districts to maintain policies and the operations of the schools. That is simply, it just would not redress the injuries that they've alleged. And I actually wanted to respond to one of your questions, Judge Larson, about the FEC case because I think that there the question was whether the plaintiffs had standing to bring an APA claim, which is separate and apart from what the plaintiffs have tried to do here. It's not standing. I mean, the Constitution applies to the APA too. We're talking about Article 3, not whether they have statutory standing. Well, I think part of the issue is that the way that the plaintiffs have framed these claims are so murky and muddy that it's hard to describe or to precisely identify what the issue is. But whether we talk about Article 3 standing or whether we say failure to state a claim or that it's simply not right, the issue is that the order that they have sought in their own explicit terms would not redress their injury. It would simply eliminate one of the many reasons that the school district could use to justify having adopted the policy that it did. The other question was about whether the violation of Title IX is more than an injury in fact issue, and I do think it is more than an injury in fact issue. Amiki and Roe at no point disputed the injury in fact as to the Title IX claim. We've recognized that there were allegations about injuries tied to constitutional violations, and we never challenged their standing to raise those constitutional violations except to the parents raising the free exercise claims and equal protection claims on their own behalf. But really it fundamentally comes down to the redressability issue. Getting the order that they've sought since the beginning of this case simply would not remedy the injuries that they've alleged. I do also want to say, Judge Moore, I think you're exactly right with your question about where do we draw the line. I mean there are people who could, there are students who might have religious objections to even having female students present in the class with them. And what I think is noteworthy is that the plaintiffs and Amiki Ohio skipped right over the question about whether that would raise, whether maintaining a policy of co-mingling students in that case would raise a free exercise claim. They jumped right over that and went directly to, well that the justification or rather the policy that the plaintiffs would be seeking in that case would violate other constitutional provisions. But I think that that's putting the cart before the horse. We need to first establish whether or not the policy is neutral and generally applicable, and then at that point we would look at what the justifications are depending on the level of, the appropriate level of scrutiny. So unless there are any more questions, I will rest. Thank you. Thank you. Thank you, your honors. I know it's late in the day, so I'll try to keep it brief. I just want to focus on addressability. You asked about the allegations. Paragraph 3 of our complaint says the board subsequently claimed that it had no choice but to make a secret change because Title IX of the Education Amendments of 1972 required it. So we allege that's why they did it. Their own declarations, I cited it in the record of Document 18, say that. I'd also remember this is judgment on the pleading, so we can look at their answer. Look at paragraph 52 of Bethel's answer, acknowledges the authenticity of a transcript from a January 2022 board meeting that you can find it in the record at 17-2, in which a board member explains that the reason they're doing this is because counsel told them they had to. So I think we've done more than enough to get us past the point where we get discovery on this issue. I'm happy to answer any other questions you have. I do have one, which you might not like. Is this case moot? So there are no, I just understand now there's no transgender students in the school. The injury that the students suffer and the parents suffer is because they're sharing a bathroom with transgender students, but there aren't any. Not moot, number one, because whether people are telling them they're transgender or not, who knows what's, I mean this isn't in the record, right? These are factual claims. The more important point is the government always has the burden of proving mootness. They have to show the injury won't arise again. They haven't even tried to do that, so they obviously haven't carried that burden. And in the constitutional claims, at least, we've sought monetary damages in addition to injunctive relief. So obviously those claims aren't moot either. So again, happy to take any further questions if there are none. What we ask is that you reverse the dismissal of the free exercise claim, the termination regarding standing on Title IX, the dismissal of parental rights claim, and at least remand for reconsideration of whether to exercise supplemental jurisdiction over the state free exercise claim. Thank you. Thank you all for your argument. The case will be submitted and the clerk may adjourn court.